UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Security State Bank of Hibbing,                  Civ. No. 13-1142 (PAM/LIB)

              Plaintiff,

v.                                              **MEMORANDUM AND ORDER**

Federal Deposit Insurance
Corporation, as Receiver for
First Commercial Bank, and
Republic Bank & Trust Company,

              Defendants.

---

This matter is before the Court on Defendant Federal Deposit Insurance Corporation's Motion to Dismiss, and Defendant Republic Bank & Trust Company's Motion for Summary Judgment. For the reasons that follow, the FDIC's Motion is granted in part and denied in part, and Republic's Motion is granted.

**BACKGROUND**

In June 2006, Plaintiff Security State Bank of Hibbing entered into a Loan Participation Agreement with a bank in Bloomington called First Commercial Bank. This Loan Participation Agreement gave Security State Bank a 47.94% "participation" interest in a $1 million loan from First Commercial to a man named Thomas Mohr. The loan was secured by three condominiums and a vacant lot on Summit Avenue in St. Paul.

Mohr defaulted on the underlying loan and First Commercial foreclosed on the properties. In May 2012, First Commercial sold one of the condo units for more than

$680,000, and distributed slightly more than $82,000 of those proceeds to Security State Bank. Security State Bank was unhappy about this, because it believed that it was entitled to 47% of the net proceeds of the sale, or more than $326,000. First Commercial refused to pay any additional money to Security State Bank.

On September 7, 2012, the Minnesota Department of Revenue closed First Commercial. The FDIC became First Commercial's receiver, and on the same day, the FDIC and Defendant Republic Bank & Trust Company entered into a Purchase and Assumption Agreement for Republic's purchase of some of the assets and liabilities of First Commercial. Security State Bank thereafter filed suit in state court against Republic, contending that Republic had assumed the Loan Participation Agreement and the liability of First Commercial for the pre-receivership breach of that Agreement. The state court ultimately dismissed the case for lack of jurisdiction, because Security State Bank had not filed a claim with the FDIC as required under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), codified in relevant part at 12 U.S.C. § 1821. Security State Bank filed that claim in December 2012, and the FDIC denied the claim in April 2013. This lawsuit followed.

**DISCUSSION**

**A.     FDIC's Motion**

The FDIC contends that this case must be dismissed on jurisdictional grounds, because Security State Bank's proof of claim was allegedly insufficient to allow the FDIC to consider the claims raised in this case. Failing that, the FDIC contends that Security State

Bank's claims fail to state a claim on which relief can be granted as to the FDIC.

   1.   **Standard of Review**

The FDIC asks the Court to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1). Because the FDIC questions the Court's jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,891 (3d Cir. 1977)). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id

When evaluating a motion to dismiss under Rule 12(b)(6), on the other hand, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs draw from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits

attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

## 2. Jurisdiction

FIRREA requires that persons or entities with claims against a failed bank must submit those claims to the FDIC for review before bringing any litigation on those claims. 12 U.S.C. § 1821(d). Failure to submit claims to the FDIC for review deprives the federal courts of subject matter jurisdiction over those claims. RTC Mortg. Trust 1994-N2 v. Haith, 133 F.3d 574, 578 (8th Cir. 1998); see also 12 U.S.C. § 1821(d)(13)(D) (stating that "no court shall have jurisdiction over" a claim that has not been first presented to the FDIC for review).

The FDIC contends that Security State Bank did not properly exhaust its claims because it did not provide sufficient proof of those claims to the FDIC. "[T]he FDIC is entitled to fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution." Brown Leasing Co. v. FDIC, 833 F. Supp. 672, 675 (N.D. Ill. 1993). According to the FDIC, Security State Bank's submissions for administrative review were a narrative letter from the bank's attorney, a copy of the Loan Participation Agreement, the closing statement from the condo sale, and a copy of the state-court complaint.

Security State Bank did not fail, as a matter of law, to provide sufficient proof of its claim to the FDIC. The state-court complaint raised the same claims as those raised here, albeit only against Republic, and thus gave the FDIC notice of what Security State Bank was

claiming. That the FDIC would have preferred more proof of what lay behind Security State Bank's claims—an accounting of the deductions First Commercial took out of the closing proceeds and an explanation of why those deductions were not allowed under the terms of the Loan Participation Agreement, for example—is not sufficient to establish that Security State Bank failed to exhaust its administrative remedies. The Court does not lack jurisdiction over Security State Bank's claims.

### 3. Failure to State a Claim

Security State Bank brings three claims in its federal Complaint. The first Count is a claim for breach of contract, which contends that First Commercial breached the Loan Participation agreement in three different ways: by continuing to administer the underlying loan after receiving a cease and desist letter from the Department of Revenue, by improperly deducting funds from the sale proceeds, and by failing to communicate and consult with Security State Bank. The second Count is a claim for a declaratory judgment, and finally Security State Bank claims entitlement to attorney's fees and costs under the Loan Participation Agreement. The FDIC contends that all of these claims fail to state a claim on which relief can be granted.

#### a. Breach of Contract Claim

##### (i) Cease and desist letter

The Loan Participation Agreement requires First Commercial's administration privileges to terminate

5

upon the occurrence of the following events: (a) the filing by or against [First Commercial] of a petition under any provision of the bankruptcy law . . .; (b) the appointment by any public or supervisory authority of any person or firm in charge of [First Commercial] or its assets; and (c) the issuance by an appropriate public monitoring or supervisory authority of a cease and desist order, or its equivalent, against [First Commercial] or its directors and officers involving the safety, soundness, or financial viability of [First Commercial].

(Nelson Aff. Ex. A at 2.) The Complaint contends that First Commercial was issued a cease and desist order at some time before it sold the condo unit in May 2012. (Compl. ¶ 20.) Security State Bank argues that the Loan Participation Agreement should be read in the disjunctive, requiring First Commercial to end its administrative responsibility on the occurrence of any of the three events listed. But that is not what the Agreement provides. The Agreement requires that First Commercial be terminated as administrator if (a), (b), and (c) happen, not if (a), (b), or (c) happen. Here, there is no dispute that First Commercial did not file for bankruptcy and was not placed in receivership before it sold the condo unit. Thus, under the clear terms of the Loan Participation Agreement, First Commercial was not required to terminate its administration of the loan, and this claim fails as a matter of law.

      (ii)  <u>Improper deduction of funds</u>

The Loan Participation Agreement provides that Security State Bank would pay its proportionate share "of all reasonable attorneys' fees and other expenses incurred by [First Commercial] in connection with enforcement of the obligations of the Borrower." (Nelson Aff. Ex. A at 2.) In addition, Security State Bank agreed to indemnify First Commercial and hold it harmless from "any and all loss, costs, liability, damages, penalties, actions, suits and expenses . . . incurred by [First Commercial] in connection with the Loan, Collateral, or the

6

Loan Documents . . . ." (Id. at 3.)  The FDIC contends that Security State Bank cannot bring a breach-of-contract claim for First Commercial's withholding of $244,000 from Security State Bank's share of the sale proceeds because that money was a cost incurred in connection with the Loan and therefore was properly withheld.

The problem with this argument is that there is no evidence on this point. Because FDIC is seeking a Rule 12(b)(6) dismissal, the Court must take the allegations in the Complaint as true. The Complaint alleges that the $244,000 was not properly deducted from Security State Bank's share. The FDIC's Motion on this point is denied.

(iii) <u>Failure to consult</u>

Finally, the Loan Participation Agreement requires First Commercial to consult with Security State Bank "regarding actions to be taken in response to a default on the Loan Documents." (Ringswald Aff. Ex. A at 2.) Security State Bank contends that First Commercial breached this obligation in unspecified ways, but does not allege that it was in any way harmed by this breach. And it is not clear how Security State Bank could have been harmed by First Commercial's failure to consult on the actions it intended to take in response to Mohr's default. First Commercial foreclosed on the property in response to the default, which is what any reasonable bank would be expected to do. Security State Bank's alleged damages were caused by First Commercial allegedly deducting too much from Security State Bank's share of the proceeds, not by any action First Commercial took in response to Mohr's default.

7

A breach-of-contract claim requires that the party suffer damages as a result of the breach. Security State Bank has failed to plead that it suffered any damages as a result of First Commercial's alleged failure to consult, and this aspect of its breach-of-contract claim must therefore be dismissed.

### b. Declaratory Judgment

FIRREA provides that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). Courts have interpreted this provision to "'effect a sweeping ouster of courts' power to grant equitable remedies.'" Hanson v. FDIC, 113 F.3d 866, 871 (8th Cir. 1997) (quoting Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995)). In addition, FIRREA contains an express prohibition on a court's exercise of jurisdiction over "any action seeking a determination of rights with respect to [] the assets of any depository institution for which the [FDIC] has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D). This section explicitly prohibits declaratory judgment actions. Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 714-15 (8th Cir. 1996). Although the FDIC does not rely on § 1821(d)(13)(D) in its argument that the declaratory judgment claim must be dismissed, that section undoubtedly applies. Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1016-18 (8th Cir. 2013) (noting that FDIC's transfer of the asset (or liability) in question is not dispositive as to whether § 1821(d)(13)(D) bars the claim).[1]

---

[1] The Eleventh Circuit recently held that § 1821(d)(13)(D) does not bar declaratory judgment claims that have gone through the FDIC's claims process. Placida Prof'l Center,

To determine whether a claim runs afoul of § 1821(j) and § 1821(d)(13)(D), "the inquiry is two-fold: the court must first determine whether the challenged action is within the receiver's power or function; if so, it then determines whether the action requested would indeed 'restrain or affect' those powers." Id. at 1017 (citing Bank of Am. Nat'l Ass'n v. Colonial Bank, 604 F.3d 1239, 1243 (11th Cir. 2010)).

Security State Bank seeks a declaration regarding whether the FDIC, Republic, or both succeed to First Commercial's liability for breach of the Loan Participation Agreement, and the extent of that liability. (Compl. ¶ 40.) This declaration challenges the terms of the sale of First Commercial to Republic, something unquestionably within the FDIC's function. And although Security State Bank does not seek to render the sale to Republic void, Security State Bank's claim does "attack the validity of a failed institution's assets [or liabilities]," id., and thus the action "restrain[s] or affect[s] the FDIC's powers to deal with the property it is charged with disbursing." Id. (citing Hindes v. FDIC, 137 F.3d 148, 160 (3d Cir. 1998) ("[A]n action can 'affect' the exercise of powers by an agency without being aimed directly at [the agency].")).

Security State Bank's declaratory judgment claim is barred by § 1821(j) and § 1821(d)(13)(D) and must be dismissed.

---

LLC v. FDIC, 512 F. App'x 938, 945 (11th Cir. 2013). The Eighth Circuit, however, has not drawn this distinction with respect to declaratory judgment claims.

### c. Attorney's Fees and Costs

The FDIC does not address this claim at all, apparently conceding that if any part of the breach-of-contract claim survives, then Security State Bank is correct that it is entitled to attorney's fees and costs under the terms of the Loan Participation Agreement. Because a portion of Security State Bank's breach-of-contract claim survives, this claim likewise will not be dismissed.

### B. Republic's Motion

Republic's liability in this case depends on whether it assumed responsibility for First Commercial's pre-receivership conduct with respect to the Loan Participation Agreement. Republic argues that the express terms of the Purchase and Assumption Agreement, through which Republic purchased some of First Commercial's assets, establish that Republic did not assume this liability and thus Security State Bank's claims against Republic fail as a matter of law.

Security State Bank relies on two provisions of the Purchase and Assumption Agreement for its argument that Republic assumed this liability. Those provisions state that Republic assumed First Commercials' "(b) liabilities for indebtedness secured by mortgages, deeds of trust, chattel mortgages, security interests or other liens . . ." and "(*l*) liabilities, if any, with respect to Qualified Financial Contracts." (Ringswald Aff. Ex. C. at 10-11.) Finally, Security State Bank argues that Republic's post-acquisition conduct manifested Republic's intent to be bound to the Loan Participation Agreement, because Republic sold another of the condo units and disbursed a portion of the proceeds from that sale to Security

State Bank.

Security State Bank first contends that because the loan underlying the Loan Participation Agreement was secured by a mortgage, the liability is one for "indebtedness secured by mortgages" and thus Republic expressly assumed this liability under subsection (b). But the liability Security State Bank seeks to enforce is not the underlying loan to Mohr. Rather, the liability is liability for breach of the contract between Security State Bank and First Commercial. That is not an "indebtedness secured by mortgages" but is a pure contractual liability. Security State Bank cannot rely on subsection (b) of Article II, Section 2.1 to establish Republic's liability in this case.

Nor is the Loan Participation Agreement a Qualified Financial Contract under subsection (*l*). Security State Bank asserts that the term "Qualified Financial Contract" is vague, requiring the Court to draw inferences in favor of Security State Bank. But Qualified Financial Contract is a term of art, defined explicitly in FIRREA itself, and thus is not vague.

FIRREA defines Qualified Financial Contract as "any securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, and any similar agreement . . . ." 12 U.S.C. § 1821(e)(8)(D)(i). According to Security State Bank, the Loan Participation Agreement here is a securities contract because "it involves the assurance that Security State Bank will be repaid and involves collateral . . . that guarantees the fulfillment of that obligation." (Pl.'s Opp'n Mem. (Docket No. 19) at 21.) But FIRREA's definition of security and the terms of the Loan Participation Agreement itself belie Security State Bank's attempt to force the clear terms of the Loan Participation Agreement into this section of the

11

Purchase and Assumption Agreement.

FIRREA defines the term "securities contract" and specifically provides that a securities contract "does not include any purchase, sale, or repurchase obligation under a participation in a commercial mortgage loan . . . ." 12 U.S.C. § 1821(e)(8)(D)(ii)(II). Further, Security State Bank agreed in the Loan Participation Agreement that it did "not consider the acquisition of its participation hereunder to constitute the 'purchase' or 'sale' of a 'security' . . . ." (Ringswald Aff. Ex. A at 2.) Security State Bank cannot agree that the transaction is not a security in one breath, then claim that it is a security in another. Security State Bank cannot rely on subsection (*l*) to establish Republic's liability.

Finally, Security State Bank relies on Republic's post-acquisition performance under the Loan Participation Agreement for its contention that Republic's conduct modified the Purchase and Assumption Agreement to include First Commercial's pre-receivership liability. Republic does not dispute that it sold at least one of the properties underlying the Loan Participation Agreement and disbursed a share of the proceeds to Security State Bank under the terms of the Loan Participation Agreement. Republic argues that the Court should not consider evidence outside the language of the Purchase and Assumption Agreement because that agreement is unambiguous and fully integrated. See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn., 664 N.W.2d 303, 314 (Minn. 2003) (Where agreement is unambiguous and fully integrated, it is "error to consider extrinsic evidence, such as the conduct of the parties . . . to reform or modify the terms" of the agreement.).

Security State Bank points to redacted schedules in the Purchase and Assumption Agreement for its argument that the agreement is ambiguous, or that discovery is necessary to determine whether the redactions include the Loan Participation Agreement. But the redactions concern assets that Republic specifically did not purchase (Ringswald Aff. Ex. C. at 51-52), account numbers for the deposits Republic agreed to assume (id. at 55-70), and other schedules that were intentionally left blank, not redacted. (Id. at SF-1, C-1.) There is simply no indication that the Purchase and Assumption Agreement contains a redacted provision regarding liabilities Republic agreed to assume in the First Commercial transaction.

Merely because Republic assumed the assets underlying the Loan Participation Agreement does not mean that Republic also assumed the breach-of-contract liability First Commercial incurred before the receivership. Republic did not agree to assume that liability in the Purchase and Assumption Agreement, and that agreement's provisions cannot be modified by Republic's subsequent conduct. Republic's Motion for Summary Judgment is granted.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant Federal Deposit Insurance Corporation's Motion to Dismiss (Docket No. 16) is **GRANTED in part** and **DENIED in part**; and

2. Defendant Republic Bank & Trust Company's Motion for Summary Judgment (Docket No. 11) is **GRANTED**.

Dated: September 30, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge